**Angela R. CASH, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 94–SC–228–DG.**

Supreme Court of Kentucky.

Feb. 16, 1995.

Margaret F. Case, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Vickie L. Wise, Asst. Atty. Gen., Crim. Appellant Div., Frankfort, for appellee.

STUMBO, Justice.

This appeal arises from the judgment of conviction of appellant, Angela R. Cash, for first-degree manslaughter, for which she received a sentence of imprisonment for thirteen years.

Appellant was charged with the murder of Russell Carter, who died of a gunshot wound on December 28, 1991, at the Hill–Top Lounge in McCracken County. Evidence indicated Carter was shot by appellant around 1:00 a.m., December 28, 1991, after a number of verbal altercations throughout the evening of December 27, 1991. Tommy Morefield and Sharon Grooms accompanied Cash to the Hill–Top Lounge. Witnesses testified that appellant and Carter were acquaintances and had been arguing throughout the evening. Appellant had been drinking prior to her arrival at the Hill–Top Lounge and continued to drink throughout the night.

Around 1:00 a.m. on December 28, appellant and Carter began to argue while Carter was sitting in the driver's seat of a car of another acquaintance, Sue Skaggs. Carter exited the automobile leaving Skaggs to stop the car. A number of witnesses testified concerning the events leading up to the death of Carter. Ultimately, Carter was shot around 1:00 a.m. and died of internal hemorrhaging. Any additional facts necessary to our analysis will be set forth in the context of our discussion of the issues.

On appeal, appellant raises two issues. First, appellant asserts that the prosecutor engaged in misconduct which precluded the testimony of a vital defense witness.

On the evening of July 13, 1992, during the trial of appellant, the prosecutor spoke with two prosecution witnesses, Tommy Morefield and Sharon Grooms. Both witnesses indicated to the prosecutor that they had lied to the grand jury concerning their involvement with appellant after the shooting of Carter. At the grand jury hearing, both witnesses testified they did not take appellant home and did not see her until the morning of December 29, 1991. However, in fact, they had driven appellant home. The prosecutor told Morefield and Grooms that if they responded truthfully and honestly to all the questions at trial, he would have no intention of charging them with perjury.

The prosecutor called Morefield as a witness on July 14, 1992. Morefield answered the questions asked of him by the prosecutor. During an in-chambers conference, the prosecutor again assured Morefield that if Morefield testified truthfully and honestly, he had no intention to prosecute him for perjury. Morefield testified. The prosecutor did not call Grooms to the stand as a witness for the Commonwealth.

On the same day, the defense counsel called Sharon Grooms as a witness. Before she took the stand, an in-chambers conference was held to advise her of her right not to incriminate herself. The following exchange took place:

THE COURT: AND WHAT I NEED TO DO IS ASK YOU WHETHER YOU WANT TO INVOKE YOUR RIGHT TO REMAIN SILENT ON THESE CHARGES.

MS. GROOMS: I WANT TO GO AHEAD AND SAY IT AND GET IT OVER WITH.

THE COURT: DO YOU UNDERSTAND THAT IF YOU DO SAY IT AND GET IT OVER WITH, THAT THE STATE MAY THEN PROSECUTE YOU FOR PERJURY?

MS. GROOMS: YOU DID SAY YES-TERDAY THAT IF I GOT UP THERE AND TOLD THE TRUTH THAT YOU'D—

MR. KALTENBACH: —I'M NOT MAKING ANY PROMISES.

Grooms then told the court that the prosecutor had advised her that if she testified truthfully at trial he would not prosecute her. The prosecutor stated that if Grooms testified and committed perjury, he "may well prosecute." In addition, on three separate occasions during continued questioning by the trial judge and continued comments by the prosecutor, Grooms indicated that she understood the consequences of her testimony, and yet, she still wanted to testify. However, Grooms eventually decided to invoke her privilege against compulsory self-incrimination after speaking briefly to another public defender. She testified for the defense only through an avowal.

This Court in *Workman v. Commonwealth*, Ky., 580 S.W.2d 206 (1979), *overruled on other grounds by Morton v. Commonwealth*, Ky., 817 S.W.2d 218 (1991), dealt with an analogous situation. In *Workman*, appellant filed a motion to dismiss the indictment of murder supported by an affidavit which alleged that the Commonwealth "entered into an agreement with Workman to abandon their prosecution of him if he passed a polygraph examination given by the Kentucky State Police." *Workman*, 580 S.W.2d at 207. Although Workman passed the exam, the Commonwealth did not uphold its bargain. According to this Court, the question was not whether the Commonwealth's bargain was wise or foolish. Instead, the question was whether the Commonwealth should be permitted to break its word. This Court held:

The record … disclosed no rational basis which would relieve the attorney for the Commonwealth from the performance of his bargain or justify the refusal of the trial judge to grant the motion to dismiss. We are faced with a hard choice, but in the last analysis we find it less evil that a criminal should escape punishment than

that the government should be allowed to welsh on its bargain.

*Id.*

While the factual circumstances are different in *Workman* and the present case, the principle is the same. In *Workman*, the Commonwealth failed to uphold the promise made to a defendant. In the present case, the Commonwealth failed to uphold a promise made to a witness. Both violations rise to a level of prosecutorial misconduct which "breeds contempt for integrity and good faith" and "destroys the confidence of citizens in the operation of their government and invites them to disregard their obligations." *Id.* Both violations denied the defendants an opportunity for a just resolution of their cases.

In this case, the two witnesses, Morefield and Grooms, were treated substantially different. Yet, both Morefield and Grooms met together with the prosecutor on the night before they were to testify. Both Morefield and Grooms admittedly lied to the grand jury concerning whether they gave appellant a ride home. Both witnesses were promised by the prosecutor if they would testify truthfully and honestly to all the questions, the prosecutor had no intention of pursuing criminal charges.

The prosecutor upheld his promise to Morefield. In chambers, the prosecutor reiterated his promise in front of the judge. As a result, Morefield testified. However, the prosecutor opted not to call Grooms to testify. When the defense counsel called Grooms to testify as a defense witness, the prosecutor refused to abide by the promise he had made to her. In fact, he threatened prosecution stating, "I may well prosecute."

In effect, the prosecutor prevented Grooms from testifying about the events leading up to the shooting of Carter. Specifically, Grooms would testify that as appellant was walking away from Skaggs' car, Carter exited the vehicle and grabbed appellant, pulled her and bumped her against Skaggs' car. In addition, Carter threatened to "whip her ass." The testimony of Grooms was not cumulative in nature. Instead, it was important to the resolution of appellant's case. The prosecutor used his power to prevent a

witness who had additional evidence from testifying after originally promising her that all he wanted was truth and honesty from her.

Such conduct by the prosecutor was a violation of the principles as set out in *Workman*, and thus, will not be tolerated by this Court. As a result, we must reverse the conviction of appellant and remand for a new trial at which the witnesses can testify *truthfully* without fear that the prosecutor will seek criminal charges against them. This Court, however, is not saying that these witnesses are free to testify in any manner which suits the occasion. Should the Commonwealth determine that the testimony at a subsequent trial is indeed untruthful, criminal charges are always a possibility.

Second, appellant claims that she was substantially prejudiced by the trial court's failure to instruct the jury correctly on the burden of proof as to voluntary intoxication.

RCr 9.22 requires a party to make "known to the court the action he desires the court to take or his objection to the action of the court." *West v. Commonwealth*, Ky., 780 S.W.2d 600, 602 (1989). Failure to comply with this rule renders an error unpreserved. *Bowers v. Commonwealth*, Ky., 555 S.W.2d 241 (1977). Appellant did not object to the alleged incorrect jury instruction, and, therefore, this "error" is deemed unpreserved.

Pursuant to RCr 10.26, this Court may review an unpreserved error and grant appropriate relief provided this Court determines that manifest injustice resulted from that error. However, this "error" does not rise to a level of palpable error to warrant review pursuant to Rule 10.26.

For the reasons set forth above, we reverse the conviction of appellant for first-degree manslaughter and remand for a new trial, and for further proceedings consistent with this opinion.

STEPHENS, C.J., and LAMBERT and LEIBSON, JJ., concur.

REYNOLDS, J., dissents by separate opinion in which SPAIN and WINTERSHEIMER, JJ., join.

REYNOLDS, Justice, dissenting.

Respectfully, I dissent. The Majority has painted a mural when, in effect, a single graphic painting would disclose neither prejudice nor prosecutorial misconduct occurred at the trial of this case.

At the end of the first day of trial, the prosecutor met with potential witness Morefield and potential witness Grooms, who revealed that their testimony at trial would, in one part, contradict that which each gave to the Grand Jury. They were told if they testified truthfully and honestly to all of the questions, then, "I (the prosecutor) had no intention of taking criminal charges"—referring to perjury.

On the following day, Morefield took the stand as a prosecution witness and at a subsequent in-chambers hearing, the witness was advised of his right not to incriminate himself, but after being informed by the prosecution that it had no intention of taking criminal charges, the witness Morefield elected to continue his testimony.

The other witness, Grooms, was called by the defense and prior to her taking the stand, the trial court informed her, as it had informed Morefield, of the consequences of testifying. The prosecution informed her that no promises were being made, in fact, the exact words were:

MS. GROOMS: You did say yesterday that if I got up there and told the truth that you'd—

MR. KALTENBACH: I'm not making any promises.

THE COURT: Let me tell you something. He cannot tell you something that would keep the Commonwealth Attorney's office from taking charges against you.

MS. GROOMS. Yes.

THE COURT: He may have in his own mind an intention not to do that.

MR. KALTENBACH: Which I don't. I mean I do have—I'm not making that representation at all. I may well prosecute.

Further inquiry at the in-chambers hearing fully expanded the position of the prosecutor and the potential witness Grooms. Appellant's attorney inquired—"Did Mr. Kalten-

bach (the prosecutor) indicate to you yesterday that if you testified truthfully today that he wouldn't prosecute you?" MRS. GROOM: "Yes, sir." MR. KALTENBACH: "I told her yesterday, Tod, that I thought she was lying to me yesterday again." Grooms thereafter decided not to testify and her testimony was offered by way of avowal.

Appellant's complaint arises from the prosecutor's offer not to prosecute its own witness, Morefield, and failing to do likewise for Grooms, a defense witness. Appellant's reliance upon *Workman v. Commonwealth,* Ky., 580 S.W.2d 206 (1979) (overruled by *Morton v. Commonwealth,* Ky., 817 S.W.2d 218 [1991]), is seriously misplaced as that case involved an agreement with a *defendant* who detrimentally relied upon the Commonwealth's promise. There is a significant distinction in this case for the promise, if it were any more than an intention, was distinctly made to witnesses who, alone, were potential prosecution witnesses.

The prosecutor's out-of-court conversation with Grooms and Morefield appears to be in direct reference to them being called as Commonwealth witnesses. The Commonwealth's case in chief was closed without calling Grooms and with the further proviso that the prosecutor thought Grooms was continuing to lie. The rationale in this case reflects that the fact-finding process could, in no wise, be deemed to have been distorted by the Commonwealth's action, nor did any inquiry or questions raised by the trial court in order to ascertain that Grooms understood her Fifth Amendment right against self-incrimination constitute an abuse of discretion.

The Majority's reliance upon *Workman, supra,* is misplaced. The great weight of authority in this country supports the principle that absent statutory or constitutional provisions to the contrary, a prosecutor has no inherent power to grant immunity to a witness in order to compel his testimony. The comments of the trial court (during the in-chambers hearings) emphasized these conditions to the potential witnesses. *Workman, supra,* actually offers no solace and the thrust of that opinion was that the government, as a promisor, will be required to perform its bargain *once the promisee has* *relied on the promise and performed his or her part of the bargain. Commonwealth v. Brown,* Ky., 619 S.W.2d 699 (1981).

Appellant claims that Grooms' testimony was most significant because she was the only witness who heard the decedent say he was going to "whip" her. A simple comparison of Grooms' avowal testimony with the testimony of both defense and prosecution witnesses verifies that Grooms' testimony was cumulative in nature and not exculpatory. While a criminal defendant may not compel the government to grant immunity to a witness, an exception has been recognized if the fact finding process is deemed to have been distorted, intentionally, by the government. An exception does not exist in this case. While Grooms' testimony was relevant, there was an abundance of testimony by other witnesses that dispelled the argument that without Grooms' testimony the fact-finding process was intentionally distorted by prosecutorial misconduct which denied a fair trial.

I would affirm the judgment of the trial court and the opinion of the Court of Appeals.

SPAIN and WINTERSHEIMER, JJ., join in this dissent.