Michael David BARTH, Appellant

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

and

Peter John BARTH, IV Appellant

v.

COMMONWEALTH OF KENTUCKY
Appellee

Nos. 1999–SC–1027–MR,
1999–SC–1056–MR.

Supreme Court of Kentucky.

Oct. 25, 2001.

Rehearing Denied Aug. 22, 2002.

John Palombi, Emily Holt, Department of Public Advocacy, Frankfort, Counsel for Appellant Michael David Barth (1999–SC–1027–MR).

A.B. Chandler, III, Attorney General, John E. Zak, Assistant Attorney General, Criminal Appellate Division, Office of the

Attorney General, Frankfort, Counsel for Appellee Commonwealth of Kentucky (1999–SC–1027–MR).

Timothy G. Arnold, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant Peter John Barth, IV (1999–SC–1056–MR).

A.B. Chandler, III, Attorney General, Vickie L. Wise, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee Commonwealth of Kentucky (1999–SC–1056–MR).

COOPER, Justice.

On May 8, 1998, two individuals entered the home of Randall Jackson in Nelson County, Kentucky, bound him, blindfolded him, tortured him, stole his money and certain other valuables, then drove off in his wife's Cadillac. Michael David Barth was arrested for these crimes on May 15, 1998. Two weeks later, Michael's brother, Peter John ("P. J.") Barth, IV, was arraigned in juvenile court and, on June 8, 1998, transferred to Nelson Circuit Court to be tried as an adult. Following a trial by jury, both brothers were found guilty of first-degree burglary, first-degree robbery, second-degree assault, and criminal mischief. Each was sentenced to twenty-three years in prison and each now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

On that May morning, two men appeared at the home of sixty-one-year-old Randall Jackson feigning car trouble to gain entry into the residence. Once inside, one of the men drew a handgun and told Jackson to lie down. The perpetrators used duct tape to bind Jackson's feet and hands and to blindfold his eyes. The two then took Jackson's wallet and demanded to know where his money was hidden. When Jackson failed to respond, the assailants dragged him across the carpet, beat

him with sticks, threatened to kill him, prodded him with the gun, and dripped hot candle wax on his neck and ears in an effort to force him to reveal the location of his money. To no avail.

Finally, the men discovered the sought-after money in the spare tire of Mrs. Jackson's Cadillac. After taking some jewelry and two bottles of bourbon, the two then drove off with the car. The Cadillac was recovered on May 10, 1998. After it was discovered that Michael Barth had sold some jewelry at an Elizabethtown pawn shop, that he matched Jackson's description of one of the robbers, and that his mother was in possession of some of the stolen jewelry, a warrant was issued for his arrest. Michael subsequently confessed to the crimes, but refused to reveal the identity of his accomplice. Police, however, suspected that Michael's brother, P. J., was the other culprit. Latent fingerprints, taken from Jackson's residence and the Cadillac, were later determined to be those of the brothers.

## I. MICHAEL BARTH'S CONFESSION.

 P.J. argues that his brother's confession was improperly admitted at trial and was improperly used at his juvenile transfer hearing in the Nelson District Court. We conclude that the admission of Michael's confession at trial violated P. J.'s right of confrontation, but that it was permissible to use the confession at the transfer hearing.

### A. Use of the confession at trial.

The Nelson Circuit Court admitted Michael's confession at trial under *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), because the confession did not explicitly refer to P.J. by name. The confession was admitted without a limiting admonition by the trial court

(none was requested). On appeal, P.J. argues that Michael's confession was inadmissible because it was not sufficiently redacted and, alternatively, that the trial judge should have admonished the jury *sua sponte* as to its limited use.

*Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), held that the admission of a non-testifying defendant's confession that expressly implicated his codefendant violated the Confrontation Clause of the Sixth Amendment of the United States Constitution. *Id.* at 137, 88 S.Ct. at 1628. In that situation, the codefendant has no opportunity to directly question his hearsay "accuser." *Bruton* overruled *Delli Paoli v. United States,* 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), which had allowed the introduction of a non-testifying defendant's inculpatory confession in a joint trial provided that a limiting instruction was given to the jury to consider the confession as evidence only against the confessor.

In *Richardson v. Marsh, supra,* the United States Supreme Court held that the Confrontation Clause is satisfied if "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211, 107 S.Ct. at 1709. In reaching this conclusion, the Court in *Richardson* distinguished *Bruton:*

> In *Bruton,* the codefendant's confession "expressly implicat[ed]" the defendant as his accomplice. Thus, at the time that confession was introduced there was not the slightest doubt that it would prove "powerfully incriminating." By contrast, in this case the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial . . . .

*Id.* at 208, 107 S.Ct. at 1707 (citations omitted).

*Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), addressed the extent and sufficiency of the redaction required by *Richardson.* In *Gray,* the non-testifying defendant's confession had been redacted by replacing any reference to the codefendant's name with a blank space or the word "deleted." *Id.* at 188, 118 S.Ct. at 1153. The Supreme Court concluded that, unlike in *Richardson,* the confession at issue referred "directly to the 'existence' of the nonconfessing defendant." *Id.* at 192, 118 S.Ct. at 1155. The Court held that a confession "which substitute[s] blanks and the word 'delete' for the [defendant's] proper name, falls within the class of statements to which *Bruton*'s protections apply." *Id.* at 197, 118 S.Ct. at 1157. Likewise, the admission of Michael's confession violated P. J.'s Sixth Amendment rights as interpreted in *Bruton* and *Gray.* In relevant part, Michael stated in his confession:

Q. And who did you go to Randall Jackson's house with?

A. I can't tell you that.

 \* \* \* \* \* \*

Q. Who taped up Randall?

A. The other party . . . .

Q. . . . You and another party, that you're not naming[,] went into the house?

A. Uh-huh.

Q. Okay, who . . . did all the injuries to Randall?

A. The other party. I made sure he's all right. I didn't touch him.

 \* \* \* \* \* \*

Q. . . . And when you . . . took the gun to the saw mill, you were by yourself?

A. Naw. Somebody was with me.

Q. Was it this other unnamed party?

A. Yeah. It was.

Q. Okay, so this person was with you at the hospital?

A. Yeah.

\* \* \* \* \* \*

Q. When you went [into Randall's house] this other party was with you .... How come you didn't get involved in none of that hitting on Randall?

A. 'Cause I'm not like that. I didn't go there to hurt nobody.

\* \* \* \* \* \*

Q. [How did Randall] get wax on him?

A. I guess the other party dumped it on him.

Q. What, candle wax?

A. Yeah.

\* \* \* \* \* \*

Q. So who took the one gun. Did you take it?

A. The other party did.

\* \* \* \* \* \*

Q. Okay, ... did you hide the gun?

A. Nope.

Q. Then who hid it.

A. The other party.

Q. And you don't [want to] say who this other party is?

A. No sir.

While the confession did not directly implicate P.J. by name, it was facially inculpatory as to the unnamed "other party." As in *Gray, supra,* the jury needed only to make a slight, intuitive leap to infer that P. J., the confessor's codefendant, was the "other party" identified in the confession as the primary perpetrator of these crimes. As explained in *Gray, supra:*

> The inferences at issue here involve statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which in-

volve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial. Moreover, the redacted confession with the blank prominent on its face ... *"facially* incriminates" the codefendant.

*Id.* at 196, 118 S.Ct. at 1157 (emphasis in original).

■ A *Bruton* violation can be subject to harmless error analysis. *Gill v. Commonwealth,* Ky., 7 S.W.3d 365, 368 (1999), *cert. denied,* 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000). However, "before a federal constitutional error can be held harmless, the [reviewing] court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Upon review of the record before us, we conclude that the error in this case was not harmless beyond a reasonable doubt.

Other than Michael's confession, the only evidence linking P.J. to the crime was Randall Jackson's in-court identification and P. J.'s fingerprints found on the Cadillac and other stolen items. The reliability of identification testimony has long been questioned by various litigants, courts and commentators. *See, e.g., United States v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967) ("[t]he vagaries of eyewitness identification are well known; the annals of criminal law are rife with instances of mistaken identification"). While sufficient to avoid a directed verdict of acquittal, we do not believe the victim's identification of P.J. as one of his attackers or the evidence linking P.J. to the spoils of the robbery were "so overwhelming that the admission of [Michael's] statement was harmless beyond a reasonable doubt." *Gill, supra,* at 368. Michael's confession, which pointed the finger at "the other party" as the primary perpetrator, was

clearly the most damning evidence against P.J. We therefore reverse P. J.'s case for a new trial, at which Michael's confession will be excluded from evidence unless Michael testifies and his testimony is inconsistent with his confession (*e.g.,* he testifies that he acted alone), KRE 801A(a)(1), or is consistent with his confession and is offered to rebut a claim of recent fabrication or improper influence or motive, KRE 801A(a)(2).

■ We disagree with P. J.'s contention that the trial court had a duty to, *sua sponte,* give a limiting admonition to the jury with respect to its use of Michael's confession.

KRE 105(a) provides:

When evidence which is admissible as to one (1) party or for one (1) purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request,* shall restrict the evidence to its proper scope and admonish the jury accordingly. In the absence of such a request, the admission of the evidence by the trial judge without limitation shall not be a ground for complaint on appeal, except under the palpable error rule. (Emphasis added.)

Federal Rule of Evidence (FRE) 105 is identical to the first sentence of the Kentucky Rule except that it uses the term "instruct" instead of "admonish." The Federal Rule does not contain the appellate review limitation in the second sentence of KRE 105, but has been uniformly so interpreted by the federal courts. *E.g., United States v. Vitale,* 596 F.2d 688, 689 (5th Cir.1979); *United States v. Bridwell,* 583 F.2d 1135, 1140 (10th Cir.1978). The "upon request" qualification of the rule is but a codification of the principle that "[t]he admission of mixed admissibility evidence without an accompanying admonition cannot be questioned on appeal by a party who failed to request an admonition

at trial." R. Lawson, *The Kentucky Evidence Law Handbook* § 1.05, at 17 (3d ed. Michie 1993) (citing 1 Wigmore, Evidence 697 (Tiller's rev. 1983) ("[T]he opponent of the evidence must ask for that instruction. Otherwise, he may be supposed to have waived it as unnecessary for his protection.")). Kentucky has long adhered to this view, *e.g., Hall v. Commonwealth,* Ky., 817 S.W.2d 228, 229 (1991), *overruled on other grounds, Commonwealth v. Ramsey,* Ky., 920 S.W.2d 526 (1996); *Raeber v. Commonwealth,* Ky., 558 S.W.2d 609, 610 (1977); *Lee v. Commonwealth,* Ky., 242 S.W.2d 984, 987 (1951); as have the federal courts, both before and after adoption of the Federal Rules. *United States v. Rhodes,* 62 F.3d 1449, 1453–54 (D.C.Cir. 1995), *vacated on other grounds,* 517 U.S. 1164, 116 S.Ct. 1562, 134 L.Ed.2d 662 (1996); *United States v. Brawner,* 32 F.3d 602, 606 (D.C.Cir.1994); *United States v. Regner,* 677 F.2d 754, 757 (9th Cir.1982), *cert. denied,* 459 U.S. 911, 103 S.Ct. 220, 74 L.Ed.2d 175 (1982); *United States v. Conley,* 523 F.2d 650, 654 (8th Cir.1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976); *Stevens v. United States,* 256 F.2d 619, 624 (9th Cir.1958).

One federal court has noted that "[t]here are occasions when, for tactical reasons, defense counsel may wish to forego such a limiting instruction because it might focus the jury's attention on the damaging evidence." *United States v. Rhodes, supra,* at 1453. To the same effect is *Hall v. Commonwealth, supra,* regarding the need to request a limiting instruction with respect to the admission of evidence of a defendant's prior felony conviction.

As a matter of trial strategy, it may be decided that the admonition would only serve to emphasize the conviction. . . . If, on the other hand, a limiting admoni-

tion is desired, it need only be requested.

*Id.* at 229.

In both *Bruton* and *Richardson v. Marsh,* the limiting instruction was, in fact, given; so the issue of whether the right to a limiting instruction can be waived was not addressed. *Bruton* held that the limiting instruction, standing alone, was insufficient to protect a defendant's right of confrontation against an incriminating out-of-court confession by a non-testifying codefendant. *Richardson* held that the Confrontation Clause is satisfied if the limiting instruction is accompanied by the redaction of the codefendant's confession "to eliminate not only the defendant's name, but any reference to his or her existence." 481 U.S. at 211, 107 S.Ct. at 1709. *Richardson* did not say that the redaction of the confession, standing alone, would be insufficient if the defendant had waived his right to the limiting instruction by failing to request it. Presumably, a confession properly redacted per *Richardson* and *Gray v. Maryland, supra,* would not incriminate the codefendant at all. In view of this fact and the "upon request" qualification in both FRE 105 and KRE 105(a), we decline to construe *Richardson* that narrowly. Upon retrial, the trial court is directed to give the limiting admonition "upon request."

*B. Use of the confession at the juvenile proceedings.*

■ KRS 640.010 grants district courts the power to transfer juvenile offenders to circuit court for trial as an adult. For those juveniles who fall within the purview of KRS 635.020, the district judge must hold a preliminary hearing to determine if, *inter alia,* probable cause exists that a serious offense was committed and that the juvenile committed it. KRS 640.010(2). P.J. argues that, at the time of transfer, the only evidence linking him to

the crime was his brother's confession, absent which there would have existed insufficient evidence of probable cause to justify the transfer.

The confession was inadmissible at trial because, as it pertained to P. J., it was hearsay. However, a transfer hearing is not a trial and less stringent evidentiary standards apply. KRS 640.010 specifically requires that "[t]he preliminary hearing shall be conducted in accordance with the Rules of Criminal Procedure." RCr 3.14(2) states that determinations of "probable cause may be based upon hearsay evidence in whole or in part." And at the heart of a district court's decision to transfer a youthful offender to circuit court is probable cause that the incident occurred and that the juvenile committed it. Furthermore, KRE 1101(d) lists those situations in which the Kentucky Rules of Evidence do not apply and "preliminary hearings in criminal cases" is one such exception. The vast majority of our sister states also allow the use of hearsay in juvenile transfer proceedings on the premise that the transferring court does not determine guilt or innocence but merely evaluates whether the juvenile should be tried as an adult. *In the Matter of S.J.M.,* 922 S.W.2d 241, 241 (Tex.App.1996). *See also Matter of Pima County,* 26 Ariz.App. 46, 546 P.2d 23, 25 (1976); *In re W.J.,* 284 Ill.App.3d 203, 219 Ill.Dec. 925, 672 N.E.2d 778, 782 (1996); *Moore v. State,* 723 N.E.2d 442, 448 (Ind.Ct.App.2000); M. Hill, *Applicability of Rules of Evidence to Juvenile Transfer, Waiver, or Certification Hearings,* 37 A.L.R.5th 703, 719–20 (1996) (noting that only three jurisdictions—Alaska, Connecticut and South Dakota—prohibit the use of hearsay evidence in juvenile transfer hearings). Therefore, though Michael's confession was inadmissible at trial, the district judge was not precluded from considering it for the pur-

pose of determining that there was probable cause to transfer P.J. to circuit court.

## II. PEREMPTORY CHALLENGE.

■ Appellants claim they were denied a fair and impartial jury because the trial court failed to excuse a venireperson for cause. Specifically, they assert that during voir dire, Juror No. 7 stated that he would have to hear a defendant testify under oath before he would believe that a defendant was remorseful. Michael and P.J. argue that this view contradicts a defendant's right to remain silent, the presumption of innocence, and the burden of proof; and, thus, Juror No. 7 should have been excused for cause.

> The voir dire discussion was as follows:
>
> Defense counsel: What if somebody shows remorse ... somebody is really sorry for what they did. Do you think that would be a factor in sentencing?
>
> Unidentified Juror: Well don't you think everybody's sorry when they do something wrong?
>
> Defense counsel: Do you think everybody's sorry for ...
>
> Unidentified Juror: If it's wrong. If they got all their mental capacities then I think they do.
>
> Defense counsel: Do you all agree. Do you think everybody feels sorry when they do something wrong?
>
> Unidentified Juror: The individual may state that they do. If they believe that it is an opportunity for them to have their punishment lessened or get reduced, it still doesn't negate the fact that the action has occurred.
>
> Defense counsel: Right. But do you think that if someone's genuinely sorry and really feels bad for what they've done, should that be a factor?
>
> Juror No. 7: I think that if he is that way that he should tell and give his side

> of it *and tell everybody he's truly sorry* and then I think that would really weigh in on it. (Emphasis added.)
>
> Unidentified Juror: I think that if somebody's sitting over there and thinking 10–15 years in prison anybody's going to sit over there and feel sorry and cry.
>
> Defense counsel: I'm hearing some mixed feelings here from this side of the room. We've got a debate going on over here. We have one here ... saying well anybody's going to say they're sorry for anything and he's [Juror 7] saying that if they genuinely mean it they're going to basically say what happened.
>
> Juror No. 7: Under oath.
>
> Defense counsel: Are you saying that some one has to testify?
>
> Juror No. 7: Well ... I ... I ... that's what I was insinuating, yeah.

It appears that Juror No. 7 was saying that before he would attribute remorse to a guilty party, he would expect that party to testify to his remorse. The privilege against self-incrimination and the presumption of innocence protect an accused from having to prove his own innocence. It has nothing to do with having to prove his own remorse. Juror No. 7 did not say that he would presume Appellants guilty unless they testified to their innocence. He stated that he would not attribute remorse to one who did not testify that he was remorseful. This view in no way infringed upon the right of Appellants to a fair and impartial jury.

■ Excusing a juror for cause rests within the sound discretion of the trial court. *Foley v. Commonwealth*, Ky., 953 S.W.2d 924, 931 (1997), *cert. denied*, 523 U.S. 1053, 118 S.Ct. 1375, 140 L.Ed.2d 522 (1998); *Bowling v. Commonwealth*, Ky., 873 S.W.2d 175, 177 (1993), *cert. denied*, 513 U.S. 862, 115 S.Ct. 176, 130 L.Ed.2d 112 (1994). Additionally, the trial court's

decision will not be disturbed absent a clear abuse of discretion. *Mills v. Commonwealth*, Ky., 996 S.W.2d 473, 487 (1999), *cert. denied*, 528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088 (2000); *Scruggs v. Commonwealth*, Ky., 566 S.W.2d 405, 410 (1978), *cert. denied*, 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978). The trial court did not abuse his discretion in declining to excuse Juror No. 7 for cause.

### III. DOUBLE JEOPARDY AND SUFFICIENCY OF THE EVIDENCE.

 Appellants next contend that their convictions of first-degree robbery and second-degree assault merged, thus, that their convictions of both offenses violated the constitutional proscription against double jeopardy. U.S. Const. amend. V; Ky. Const. § 13. Alternatively, Appellants assert that the Commonwealth introduced insufficient evidence to convict them of second-degree assault. We affirm as to both issues.

Appellants' double jeopardy claim stems from the jury instructions on both first-degree robbery and second-degree assault. The instruction on first-degree robbery required the jury to find that Appellants stole money and personal property from Jackson and that "in the course of so doing and with the intent to accomplish the theft, [they] threatened the immediate use of physical force upon Randall Jackson with a firearm." The instruction on second-degree assault required the jury to find that Appellants "inflicted an injury upon Randall Jackson by striking or poking him with a pistol." The brothers claim that the conduct that formed the basis of the assault (poking Jackson with a pistol) was the same as that which formed the basis for the robbery (threatening Jackson with a firearm), *ergo*, the second-degree assault

charge merged with the first-degree robbery charge.

However, the appropriate test for double jeopardy was enunciated in *Commonwealth v. Burge*, Ky., 947 S.W.2d 805, 811 (1996), *cert. denied*, *Effinger v. Kentucky*, 522 U.S. 971, 118 S.Ct. 422, 139 L.Ed.2d 323 (1997). In *Burge*, we departed from the so-called "same conduct" test described in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), *overruled*, *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), and in *Walden v. Commonwealth*, Ky., 805 S.W.2d 102, 106 (1991), *overruled*, *Commonwealth v. Burge*, *supra*, and reinstated the *Blockburger* rule "as the sole basis for determining whether multiple convictions arising out of a single course of conduct constitutes double jeopardy." *Taylor v. Commonwealth*, Ky., 995 S.W.2d 355, 358 (1999). As stated by the United States Supreme Court, "the test ... to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Under this analysis, the two offenses at issue here did not merge. The instruction on first-degree robbery was premised upon KRS 515.020(1)(b), use or threat of physical force with the intent to accomplish a theft while armed with a deadly weapon. The instruction on second-degree assault was premised upon KRS 508.020(1)(b), intentional infliction of physical injury by means of a deadly weapon. Appellants' convictions of first-degree robbery required proof of a theft or attempted theft, an element not required for their convictions of second-degree assault; and Appellants' convictions of second-degree assault required proof of an injury, an element not required for their convictions of first-degree robbery. Thus, each offense required

proof of an additional fact which the other did not.

The brothers' second argument suffers from a mischaracterization. Though they assert there was insufficient evidence to prove they committed assault in the second degree, an issue preserved by their motions for directed verdict of acquittal, their complaint is actually about the wording of the instruction, to which they did not object. The trial judge instructed the jury that the Appellants could be found guilty of second-degree assault if they acted as either principal or accomplice, or both. However, the theories of liability were identical and read substantially as follows:

> You will find the Defendant guilty of Second–Degree Assault, Principal, under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about May 8, 1998 and before the finding of the Indictment herein, he inflicted an injury upon Randall Jackson by striking or poking him with a pistol;
>
> B. That the pistol was a dangerous weapon as defined in Instruction No. 1;
>
> AND
>
> C. That in so doing, the Defendant intentionally caused physical injury to Randall Jackson.

Appellants argue that the evidence did not prove that Jackson suffered an injury from being prodded with a pistol, thus, the trial court erred in not granting the motion for a directed verdict. However, the issue is not whether the instruction conformed to the evidence introduced at trial, but whether the Commonwealth presented sufficient evidence of second-degree assault to avoid a directed verdict of acquittal. *Murphy v. Commonwealth*, Ky., 50 S.W.3d 173, 179 (2001); *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991).

Second-degree assault can be committed in one of three ways: by intentionally causing serious physical injury to another; by intentionally causing physical injury to another with a deadly weapon or dangerous instrument; or by wantonly causing serious physical injury to another with a deadly weapon or dangerous instrument. KRS 508.020(1)(a),(b), and (c). Since Jackson did not suffer a serious physical injury, as that term is defined in KRS 500.080(15), the Commonwealth had to prove that an intentional physical injury was inflicted upon him by means of a deadly weapon or dangerous instrument. KRS 508.020(1)(b). To that end, Jackson testified that he was dragged across the carpet, beaten over the back with what he believed to be wood sticks, and kicked in the head, had hot candle wax poured on his neck and ears, and was prodded with a pistol. Photographs admitted into evidence showed large welts across his back and shoulders. The sticks were arguably "dangerous instruments" under KRS 500.080(3), as they were "readily capable of causing ... serious physical injury." This evidence was sufficient to overcome a directed verdict of acquittal of second-degree assault. *Benham, supra.* Any error in the instruction on second-degree assault was not preserved for appellate review. RCr 9.54(2); *Cash v. Commonwealth*, Ky., 892 S.W.2d 292, 295 (1995).

### IV. AVOWAL TESTIMONY.

During the trial, the Appellants sought to impeach Jackson's credibility by eliciting testimony from him that he was a "bookmaker." The judge prevented this line of questioning before the jury, but the Appellants moved that the testimony be heard by avowal. RCr 9.52. The trial court obliged and the Appellants cross-

examined Jackson for several minutes over his alleged gambling practices. Now they claim error in that the trial court ended the avowal testimony prematurely and that the avowal testimony should have been heard by the jury.

RCr 9.52 states:

In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, upon request of the examining attorney the witness may make a specific offer of his or her answer to the question. The court shall require the offer to be made out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon.

*See also* KRE 103(a)(2). The rules do not provide time limits for testimony by avowal. However, the only purpose of an avowal is to preserve for appellate review an issue concerning which testimony has been suppressed. KRE 103(a)(2). Here, Appellants sought to prove that Jackson was engaged in illegal "bookmaking" activities. The avowal, which lasted several minutes, focused solely on that issue and was sufficient to preserve the error for review. Thus, Appellants could not have been prejudiced by the fact that the trial court ultimately terminated the avowal.

In support of their claim that the evidence of Jackson's alleged bookmaking activities was relevant, the brothers argue that Michael's confession revealed that a third party instigated them to commit the crimes because of ill will between Jackson and the instigator from a gambling motive. If revenge motivated the crimes, Appellants argue, evidence of Jackson's gambling activities was relevant. Appellants also assert that information that Jackson

engaged in illegal bookmaking activities affected his credibility as a witness.

As to the first contention, KRE 401 defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 403 excludes this evidence because "its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury." Jackson's alleged gambling activities were not on trial; and the third party's alleged motive for instigating the brothers to commit the crimes did not absolve the brothers of their guilt. The unnamed third party was not on trial. Thus, the probative value of the evidence of Jackson's alleged bookmaking activities was minimal as compared to its prejudicial effect. Obviously, the purpose of this testimony was to imply that criminals should not be punished for crimes perpetrated against other criminals. Since the status of a victim is no defense to a crime committed against him, the trial judge properly suppressed this evidence.

Appellants state that KRE 611(b) allows cross-examination of a witness "on any matter relevant to any issue in the case, including credibility" and that evidence of Jackson's illegal gambling activities affected his credibility as a witness. However, the law in Kentucky has long been that "[a] witness may be impeached by any party ... by contradictory evidence ... but not by evidence of particular wrongful acts." CR 43.07; *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13, 29 (1998), *cert. denied*, 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999); *Shirley v. Commonwealth*, Ky., 378 S.W.2d 816, 818 (1964); *Daugherty v. Kuhn's Big K Store*, Ky. App., 663 S.W.2d 748, 749 (1983). Since cross-examination of Jackson about his al-

leged bookmaking activities would constitute impeachment by evidence of a particular wrongful act, the trial court did not err in excluding that evidence.

## V. THE WOOD STICKS.

█ Because he was blindfolded when beaten, Jackson could not testify to what weapon was used to inflict the beating. However, he identified two wood window-shade sticks that he had found on the floor of his residence near the location where the beating took place. The sticks matched the size of the welts across his back. The trial judge allowed the sticks to be admitted into evidence. Appellants claim the sticks were not properly "authenticated" as the weapons used to beat Jackson.

Again, Appellants' argument suffers from a mischaracterization. The question of the admissibility of the sticks is one of identification—not authentication (as in authentication of writings, voices, bodily fluids, etc.)—of real or demonstrative evidence (as in evidence "presented in tangible form for direct and immediate sensory observation," *i.e.*, a murder weapon). *See* Lawson, *supra*, at § 11.00, p. 589. As Professor Lawson states, "[i]dentification of tangible evidence, like authentication of documents, is an aspect of relevancy, meaning that it is simply logical to require preliminary proof that a tangible object is linked by time, place, and circumstance to the incident." *Id.* at 590.

Article IX of the Kentucky Rules of Evidence is titled "Authentication and Identification," and KRE 901(a), which essentially codifies the old common law identification rule, provides that "authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." In *Higgins v. Common-*

*wealth*, 142 Ky. 647, 134 S.W. 1135 (1911), the state prosecuted the defendant for murder and introduced an iron pipe as a possible murder weapon. However, no proof was offered of when, where, or by whom the pipe had been found. Our predecessor Court held the pipe was inadmissible, but stated evidence could be admitted if:

> it was found at a time and a place furnishing reasonable ground to connect it in some way with the [incident]. The proof need not positively show the connection; but there must be proof rendering the inference reasonable or probable from its nearness in time and place or other circumstances.

134 S.W. at 1138. *See also Grundy v. Commonwealth*, Ky., 25 S.W.3d 76, 79–81 (2000) (holding admissible a fist-sized piece of concrete found a few days after supposedly being used in an alleged assault).

The wood window-shade sticks were properly admitted. The victim found the sticks at the scene of the crime and they matched the welts on his back. The sticks were linked by time, place and circumstance to the crime. That was sufficient identification to allow their admission into evidence.

## VI. KRE 404(b).

█ Shelly Frazier, roommate of Appellants' mother, testified that she drove Michael and P.J. to Lebanon Junction on the afternoon of May 8 and that, before the three entered the vehicle, Michael pulled a gun on his brother to enforce his insistence that he be allowed to ride "shotgun." At trial, the Commonwealth's attorney explained that he only wanted Frazier to testify that she saw Michael in possession of the gun used in the crimes. Michael agreed this was a proper purpose but wanted the remainder of the testimony excluded as too prejudicial. P.J. wanted

the entire incident admitted to prove that Michael was the ringleader. (Michael's confession stated that the "other party" had the gun.) The trial court permitted Frazier to describe the entire incident. Michael claims this violated the KRE 404(b) stricture against admitting evidence of other crimes, wrongs, or acts.

KRE 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ It is hardly worth repeating that this list of permissible purposes is illustrative rather then exhaustive. Lawson, *supra*, at § 2.25, p. 87; *see also Tamme, supra*, at 29. Frazier's testimony concerning the gun proved the identity of the gun used in the crime, and, by inference, Michael's identity as a perpetrator of the crime. Thus, the Commonwealth's use of Frazier's testimony satisfied a listed exception to KRE 404(b). For Frazier to testify to the identity of the weapon, it was necessary for her to relate the incident behind her observation: that Michael flourished the weapon and threatened to use it against his codefendant.

## VII. ALLEGED PROSECUTORIAL MISCONDUCT.

■ Michael next complains that, during his guilt phase argument, the prosecutor made prejudicial remarks that denied him a fair trial. First, the prosecutor remarked "I submit to you that he [Michael] can do this over if he's not found guilty of these four charges." Michael asserts this remark violated *Payne v.*

*Commonwealth,* Ky., 623 S.W.2d 867 (1981), *cert. denied,* 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167 (1982), wherein this Court held it impermissible to advise the jury of the consequence of returning a verdict of not guilty by reason of insanity, *i.e.,* admittance to a mental hospital. In essence, we held that "[t]he consideration of future consequences such as treatment, civil commitment, probation, shock probation, and parole ... serve to distort" a jury's main function: the determination of guilt or innocence. *Id.* at 870. That was in 1982. Now, upon request, a jury is instructed as to the consequences of a verdict finding the absence of criminal responsibility. RCr 9.55. Regardless, a statement by the prosecutor that if acquitted, a defendant might commit other crimes, does not violate *Payne.*

■ Michael's next complaint centers on the prosecutor's argument that Michael deserved the maximum penalty on burglary because all three of the aggravators were present. There was no contemporaneous objection to this remark, KRE 103(a)(1), RCr 9.22, and its utterance did not unduly prejudice Michael, much less constitute manifest injustice. KRE 103(e); RCr 10.26. Though Appellant filed a motion in limine to preclude the prosecutor from misstating the law to the jury, the trial court reserved its ruling on the matter until specific objections were made. Regardless, the prosecutor's argument misstated neither the law nor the facts.

## VIII. DELAY IN DISMISSAL OF CHARGES.

■ Michael also asserts that the trial court erred in not dismissing the first-degree assault charges or the theft charges before the indictment was read to the jury. In essence, Michael states that there was no evidence to prove either theft

or first-degree assault and that the reading of those charges to the jury prejudiced him by creating the false impression that enough evidence existed to convict him of the remaining charges. Grand juries, not prosecutors, indict felony defendants, RCr 5.20; and the rule in Kentucky has long been that summary judgment does not exist in criminal cases. *Commonwealth v. Hayden,* Ky., 489 S.W.2d 513, 516 (1972); *Commonwealth v. Hamilton,* Ky.App., 905 S.W.2d 83, 84 (1995) The Commonwealth is entitled to present its evidence to a jury before a trial court can dismiss a charge by directed verdict of acquittal.

■ Michael also claims it was error to instruct the jury on second-degree assault, since the evidence supporting that instruction conflicted with the indictment for first-degree assault. This argument seems to be that second-degree assault was not a lesser included offense of first-degree assault under the facts of this case. If so, we disagree. Furthermore, this claimed error is unpreserved and does not amount to manifest injustice. RCr. 10.26.

Accordingly, the judgment of conviction and the sentences imposed by the Nelson Circuit Court against Appellant Michael David Barth are affirmed, and the judgment and sentences imposed against Appellant Peter John Barth, IV, are reversed and his case is remanded to the Nelson Circuit Court for a new trial consistent with this opinion.

LAMBERT, C.J.; GRAVES and KELLER, JJ., concur.

JOHNSTONE, J., concurs by separate opinion, in which STUMBO, J., joins.

WINTERSHEIMER, J., concurs as to the affirmance of the conviction, but dissents without opinion as to the remand.

JOHNSTONE, Justice, Concurring.

I concur with the majority opinion, except for its holding that a trial court is not required to give an admonition to the jury when it admits the redacted confession of a non-testifying co-defendant in a joint trial.

The admission into evidence of a party's own statement against that party is not excluded by the hearsay rule. KRE 801A. But when used against a co-defendant as substantive evidence, it remains inadmissible hearsay and its introduction into evidence as such violates the defendant's constitutional right to confront the witnesses against him. *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 1706–07, 95 L.Ed.2d 176, 185 (1987). In my view, the *Bruton* line of cases establish *a rule of admissibility* for party admissions of non-testifying co-defendants in joint trials. As shown below, the giving of an admonition by the trial court is an essential component of the rule and, thus, a necessary predicate to admissibility.

The *Bruton* Court rejected the argument that giving an admonishment in connection with the admission of a confession by a non-testifying co-defendant adequately protects a defendant's constitutional rights:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating prejudicial statements of a codefendant, who stands side-by-side with the defendant, are deliberately spread before the jury in a joint trial....

*Bruton v. United States,* 391 U.S. 123, 135–36, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476, 485 (1968).

The *Richardson* Court expressly distinguished *Bruton* on the effectiveness of an admonition to the jury when the admonition is given in connection with a redacted confession:

> The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process. On the precise facts of *Bruton,* involving a facially incriminating confession, we found that accommodation inadequate. [T]he calculus changes when confessions that do not name the defendant are at issue.... We hold that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession *with a proper limiting instruction* when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.

*Richardson,* 481 U.S. at 211, 107 S.Ct. at 1709, 95 L.Ed.2d at 188 (emphasis added).

Under *Richardson,* the admissibility of a confession by a non-testifying co-defendant turns on both redaction and the giving of a proper limiting instruction. A limiting instruction is required to protect the defendant's constitutional rights. This requirement makes KRE 105 inapplicable to this issue.

As stated by the majority, KRE 105 does specifically state that an admonition is to be given "upon request" when evidence is admitted against one party and not another. But KRE 105 is a *general rule.* The *Bruton* line of cases establish a *specific rule* for the introduction of the confession of a non-testifying co-defendant. One of the most basic rules of statutory construction is that when "two statutes deal with the same subject matter, one in a broad, general way and the other specifically, *the specific statute prevails.*" *DeStock No. 14, Inc. v. Logsdon,* Ky., 993 S.W.2d 952, 959 (1999) (emphasis added).

Granted, we do not have two statutes in this case. Nor do we even have two codified rules. But both KRE 105 and the *Bruton* rule deal with the same subject matter, *i.e.,* the admissibility of evidence against one party and not another. Further, the *Bruton* rule is not mere common law; it is a constitutional mandate from the U.S. Supreme Court. As the *Bruton* rule is more specific as to the subject matter at issue than is KRE 105, I would hold that a trial court *must* give an admonition as a necessary predicate to the admissibility under *Bruton* and *Richardson* of a redacted confession by a non-testifying co-defendant, unless the defendant requests that an admonition not be given.

STUMBO, J., joins this concurring opinion.