**Marquis Deron HEARD, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2004–SC–000551–DG.

Supreme Court of Kentucky.

March 22, 2007.

Matthew Boyd, Boyd & Boyd, Lexington, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Louis F. Mathias, Jr., Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

LAMBERT, Chief Justice.

Appellant, Marquis Deron Heard, was convicted of criminal trespass in the first degree and of second-degree assault, a class D felony. His convictions stem from an altercation with Andreal (Angel) Saunders, the mother of his infant daughter, while she and the child were visiting the home of her grandmother, Sara Saunders.[1] The principal issue is whether Appellant's confrontation clause rights were infringed.

Appellant attempted to visit Angel at Sara's home, but Sara would not allow him in. Later, when Sara left the residence to do errands, Appellant broke into the house by kicking in the door. An altercation ensued, and on charges brought thereafter, Appellant was found guilty of assaulting Angel with the butt of a handgun. When Appellant left the residence, he took the parties' child with him.

When Sara returned home, she saw the aftermath of the altercation including damage to her door and physical injuries to Angel's face. Angel described the altercation to Sara and directly implicated Appellant. Thereafter, Officer Gilbert of the Lexington–Fayette Urban County Division of Police was called to the scene. Angel responded to Officer Gilbert's questions and again implicated Appellant. She told him that Appellant had called to see if her grandmother was at home, and upon learning that she was not, he came to the residence. When Angel refused to open the door, Appellant kicked it in. Angel also told Officer Gilbert that Appellant began hitting her over the head with a handgun because she would not let go of their infant child, and when she finally did have to let go, Appellant grabbed her. According to her statement to Officer Gilbert, Appellant pointed the weapon at her and said that he would have shot her if the gun had not been broken. Another police officer and a paramedic both spoke to Appellant when he called his own cell phone, which he had left at Sara Saunders' residence. Eventually Appellant hung up the cell phone and called the house phone. Officers listened as he spoke with Sara, and he also spoke with the paramedic. Appellant admitted to the paramedic that he had hit Angel with his fists, but not with a gun. Angel was taken to Good Samaritan Hospital and treated for her injuries by Dr. Wicker. Later that night, the child was returned to Angel after an officer had located the child in the care of Appellant's mother.

At trial, the victim, Angel Saunders, refused to testify. She refused to honor a subpoena to testify and subsequently recanted her previous incriminating statements in an affidavit. Angel's affidavit was filed in support of Appellant's motion for judgment of acquittal or for a new trial. The trial court overruled the motions.

Appellant appealed to the Court of Appeals arguing that the trial court violated his Sixth Amendment right to confront his accuser by admitting into evidence the victim's out-of-court statements made through Officer Gilbert and Dr. Wicker. He also asserted error in the trial court's admission of various parts of Sara Saunders' testimony. Finally, he argued that the trial court should have granted his

---

1. The record is unclear whether Sara Saunders is the grandmother or great-grandmother of Andreal (Angel) Saunders. Filings in the trial record refer to her as the grandmother, but the appellate briefs identify her as the great-grandmother. The confusion seems to arise from the fact that Andreal (Angel) and her child have the same name.

motion for a mistrial due to a paramedic's reference to Appellant's prior criminal record in violation of a pre-trial order.

Recognizing that portions of Officer Gilbert's testimony were improperly admitted in light of the United States Supreme Court's decision in *Crawford v. Washington*,[2] the Court of Appeals nevertheless affirmed Appellant's conviction upon its conclusion that the erroneously admitted testimony was cumulative of other admissible evidence and therefore harmless. This Court granted Appellant's motion for discretionary review, heard oral argument, and now reverses in part the decision of the Court of Appeals.

We begin with a discussion of the Confrontation Clause and relevant jurisprudence and focus upon two recent decisions of the Supreme Court of the United States.[3] The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."[4] In a landmark decision overruling settled precedent, the United States Supreme Court held in *Crawford v. Washington*[5] that where testimonial evidence is at issue, the Sixth Amendment demands unavailability and a prior opportunity for cross-examination, and that the admission of testimonial statements against an accused without an opportunity to cross-examine the declarant is alone sufficient to establish a violation of the Sixth Amendment.

With respect to testimonial statements, *Crawford* overruled the *Ohio v. Roberts*[6] balancing test which had prevailed for a quarter century. *Roberts* was far more liberal and had generally allowed unavailable out-of-court witness statements to be admitted, even if testimonial in nature, as long as the statement possessed sufficient indicia of reliability.[7] The trial of this case pre-dated *Crawford* and the trial court admitted Officer Gilbert's testimony in accordance with *Roberts*. However, this Court must evaluate admission of the evidence in light of the more recent *Crawford* and *Davis v. Washington*,[8] decisions that appear to be controlling of the case at bar.

While *Crawford* declared statements made during a police interrogation to be testimonial in nature, it did not elaborate on the definition of "interrogation," nor upon when or under what circumstances such out-of-court statements may be admitted. *Davis* provided the elaboration as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.[9]

**2.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**3.** *Crawford*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, and *Davis v. Washington*, 547 U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

**4.** U.S. Const. amend. VI.

**5.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.

**6.** *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

**7.** *Id.*

**8.** 547 U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224.

**9.** *Id.* at ——, 126 S.Ct. 2266.

One of the "interrogations" under review in *Davis* occurred after the victim had called 911 for assistance. The 911 operator asked the caller (the victim) several questions. *Davis* identified the statements initially made by the victim as non-testimonial because she was being assaulted during the conversation and was speaking about events as they were actually occurring. The Court noted, however, that statements made to address an ongoing emergency may evolve into testimonial statements if they recount past events after the emergency is over. Thus, *Davis* sets a high standard. Not all statements made in the general context of an emergency will meet it. The emergency must be in progress for the statements to qualify.

 Officer Gilbert was permitted to repeat what Angel had told him about the attack Appellant made on her, events that had already occurred. She gave no reported information bearing upon the safety or whereabouts of her child. There was no ongoing emergency with respect to the events Angel recounted. She was safely in the presence of one or more police officers and the statements concerned violations of law. Angel's statements to Officer Gilbert were clearly testimonial and they should not have been allowed into evidence. The Court of Appeals recognized this but found the error to be harmless. Accordingly, we must examine Officer Gilbert's testimony in light of all of the evidence to determine whether its admission can be so characterized. It must not be overlooked that "before a federal constitutional error can be held harmless, the [reviewing] court must be able to declare a belief that it was harmless beyond a reasonable doubt." [10]

 Appellant contends that Officer Gilbert's testimony was not harmless. He offers seven particular out-of-court statements made by Angel that he alleges were offered exclusively through this testimony: 1) Appellant had called and asked if her grandmother was gone; 2) Appellant showed up a few minutes after the call and threatened to kick in the door; 3) Appellant did kick in the door; 4) Appellant hit Angel in the head with a gun; 5) Angel refused to let go of the child; 6) when Angel did let go, Appellant grabbed the child; and 7) Appellant pointed a gun at Angel and said that he would have shot her if the gun were not broken.

Upon thorough review of the trial record, we cannot in good conscience declare that this erroneously admitted testimony was harmless beyond a reasonable doubt. While Officer Gilbert's testimony was cumulative of Sara's testimony to the extent that Sara testified that Appellant apologized to her over the phone for breaking down the door, and to the extent that Angel told Sara that Appellant hit her with a gun, the most detrimental evidence against Appellant was Officer Gilbert's hearsay repetition of Angel's statements, in violation of the Sixth Amendment.

In *Barth v. Commonwealth*,[11] this Court declined to hold harmless the erroneous admission of a non-testifying co-defendant's confession which implicated some "other·party." Though the confession was not specifically incriminating to the defendant on its face, it became so when linked with other evidence adduced at trial. Moreover, in *Barth*, there was additional evidence against the defendant including an in-court identification by the victim and

---

10. *Barth v. Commonwealth*, 80 S.W.3d 390, 395 (Ky.2001) (*citing Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)).

11. 80 S.W.3d 390.

the defendant's fingerprints at the scene of the crime and in the vehicle stolen therefrom. Nevertheless, we rejected the Commonwealth's contention that the error was harmless based on our conclusion that the co-defendant's confession "was clearly the most damning evidence against [the defendant]. We therefore reverse [the defendant's] case for a new trial ..." [12]

Likewise, in the instant case, Officer Gilbert's testimony was the most damning against Appellant with regard to the second-degree assault conviction. There are three means by which one may commit assault in the second degree. Two require proof of "serious physical injury." [13] The jury here was instructed only on the remaining means [14] which requires proof of intentionally causing "physical injury" by means of a "dangerous instrument." Despite the victim's failure to testify, and the fact that no gun or other dangerous instrument was persuasively linked to the assault by admissible evidence, the jury found Appellant guilty of this offense and recommended the maximum allowable sentence of ten years imprisonment. Additionally, one of the most influential statements from which the jury could have inferred Appellant's intent to cause Angel physical injury was offered exclusively in Officer Gilbert's testimony, i.e., that Angel said that Appellant pointed a gun at her and said that he would have shot her if the gun were not broken. While there were vague references to the gun by two other witnesses, nothing was as powerful as Officer's Gilbert's repetition of Angel's statement about Appellant shooting her if the gun were not broken.

We have not overlooked Sara's testimony that Angel told her Appellant hit her with a gun, but this testimony was undermined by her initial statement that she could not remember what Angel said to her. The other witness to refer to the gun was Dr. Wicker, Angel's treating physician at the hospital. However, while he testified that his notes implied that Angel was the direct source of this information, he also noted that he had received some information from the paramedics. As Dr. Wicker had only a vague recollection of treating Angel, he could not say with certainty that Angel was the one who told him the injuries resulted from being hit with a gun.

Our examination of Officer Gilbert's testimony in light of the other evidence presented at trial reveals that it was not harmless beyond a reasonable doubt. Therefore, we reverse Appellant's conviction of second-degree assault for a new trial, at which Officer Gilbert's testimony relaying testimonial statements made by Angel should be excluded.

■ As a new trial will be required and the admissibility of Sara Saunders' and Dr. Wicker's testimony will likely be challenged, it is appropriate to address these claims of error. The trial court was within its discretion when it admitted Dr. Wicker's testimony under the medical treatment exception to the hearsay rule.[15] Any shortcoming in the testimony can be dealt with on cross-examination.

■ With regard to Sara Saunders' testimony, Appellant asserts that Angel's statements to Sara immediately upon Sara's return to the residence should not have been admitted. Though Appellant seems to object to the entirety of Sara's testimony, we note that most of it consist-

---

12. *Id.* at 396.

13. KRS 508.020(a) and (c).

14. KRS 508.020(b).

15. *See* KRE 803(4).

ed of her personal observations. For example, she observed Angel crying when she returned home. She also observed that Angel's head was bleeding and that the door to her home was damaged. In fact, our review of her testimony reveals only two statements regarding something Angel said to her.[16] Specifically, Sara testified that Angel said something about the door to the house, and that Angel told her that Appellant had hit her in the head with a gun. The trial court admitted this testimony as an excited utterance. KRE 803(2) provides that "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is an exception to the hearsay rule.

Our examination of the record leaves us unable to say whether Sara's testimony should have been admitted as an excited utterance. Factors that should be considered include the lapse of time between the act and the declaration, the opportunity, likelihood or inducement to fabricate, the place of the declaration, whether it was made in response to a question, whether the declaration is against interest or is self-serving, the presence of visible results of the act to which the utterance relates and the emotional state of the declarant.[17] Thus, on remand, the trial court should hold a hearing to determine whether Sara's testimony satisfies the excited utterance exception or some other applicable exception to the hearsay rule.

We see no need to address the reference to Appellant's prior criminal record in vio-

lation of the pre-trial order as we are confident it will not recur upon retrial.

Finally, as Appellant made no claim of entitlement to a directed verdict or asserted trial error warranting reversal with respect to his first-degree criminal trespass conviction, we affirm that portion of the decision of the Court of Appeals and the final judgment of the trial court. However, as required by our analysis herein, we reverse the decisions of the courts below with respect to the second-degree assault conviction and remand to the trial court for further consistent proceedings.

CUNNINGHAM, McANULTY, MINTON, NOBLE, SCHRODER, and SCOTT, JJ., concur.

---

**16.** *Crawford, supra* and *Davis, supra* make a clear distinction for purposes of Confrontation Clause applicability between out-of-court statements to a person in a position of authority, such as a police officer, and more casual statements made to non-official actors. "An accuser who makes a formal statement to

government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354.

**17.** *Thomas v. Commonwealth,* 170 S.W.3d 343 (2005).