# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

2014-SC-000337-MR

DATE \\-\9-\5 €₃ₐₐGₜₒᵤ₊₊?

CHRISTINA MARCUM                                                      APPELLANT

ON APPEAL FROM MADISON CIRCUIT COURT
V.          HONORABLE WILLIAM G. CLOUSE, JR., JUDGE
NO. 11-CR-00283-002

COMMONWEALTH OF KENTUCKY                                    APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Christina Marcum appeals from her conviction of complicity to murder, complicity to tampering with physical evidence, and first-degree hindering apprehension or prosecution. She argues that the trial court erroneously admitted evidence in violation of the Sixth Amendment's Confrontation Clause and Kentucky Rule of Evidence (KRE) 504(b)'s marital privilege. For reasons stated herein, we affirm.

## I.     BACKGROUND.

Christina Marcum and Jason Singleton were indicted for several crimes surrounding the death and dismemberment of Jason's wife, Angela Frazier Singleton. The three were involved in a prolonged and destructive love triangle, and the Commonwealth alleged that, in order to be together, Marcum and/or Jason had murdered Angela. Marcum was indicted for complicity to murder, complicity to tampering with physical evidence, and first-degree hindering

apprehension or prosecution. Jason was indicted for complicity to murder, complicity to tampering with physical evidence, third degree arson, and abuse of a corpse. Jason ultimately pled guilty to these charges and was sentenced to 30 years' imprisonment. Marcum chose to go to trial.

During Marcum's 10-day jury trial, two pieces of evidence were admitted that form the basis for her appeal. The first was a written and signed statement read by Jason during his plea colloquy on May 7, 2013. In it, Jason, who was not called to testify, took responsibility for dismembering and disposing of Angela's body but claimed that Marcum had actually committed the murder. The trial court admitted the statement because it found that the defense counsel had opened the door to it and admonished the jury not to accept it as substantive evidence. Kentucky State Police Detective Brian Reeder, the lead detective in the investigation, read the statement to the jury during the Commonwealth's case-in-chief.

The second piece of evidence was a note that the Commonwealth alleged was written by Marcum while visiting Jason in jail before she was arrested. Marcum's husband, Nick Marcum, found the note in the couple's bedroom and voluntarily gave it to the police. In pertinent part, the note read:

> I love you. You are my whole world. We will be together. You will get off in Richmond and I will wait for you. As long as we're all on the same page, not guilty, it will work out. Your mom doesn't trust me that scares me. All I want is for you to get out so we can finally be together. I won't do anything to jeopardize that. Me being here is bad for both because they want to use me against you. If not they will arrest me. The day you called my attorney told me they were looking to charge me with complicity to murder. But if they use me as a witness, I'm not credible. I'll make damn sure. I won't if that's what you want. I can't imagine anyone else, just you. With her signing in, I'm afraid they will check your calls more.

2

What's in the warrant is not what I said and I was recorded. I'm not going to let anyone or anything keep us apart. I'd live in a box with you, I don't care. I thought about fucking that Detective Reeder, but I don't know if it would be possible. If it came to that your attorney would slaughter me. Nick?? . . . .

It is worth noting that the note was not written in the traditional paragraph form; instead, it appears to have been written one phrase at a time because individual parts are at different angles and positions on the page.

Marcum objected to the note's admissibility under KRE 504(b)'s marital privilege. The trial court conducted a mid-trial evidentiary hearing and admitted the note, which Detective Reeder then read to the jury.

At the conclusion of trial, the jury found Marcum guilty of all three charges and recommended a total sentence of 30 years' imprisonment. The trial court entered a judgment and sentence in accordance with the jury's recommendation, and Marcum appealed to this Court as a matter of right. Ky. Const. § 110(2)(b). We set forth additional facts as necessary below.

## II. STANDARD OF REVIEW.

The standard of review for evidentiary issues is abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

### III. ANALYSIS.

#### A. Plea Proffer.

Marcum argues that the trial court violated the Confrontation Clause of the Sixth Amendment when it admitted Jason's plea proffer into evidence. She alleges that the statement was obviously inculpatory and, because Jason was available to testify but not called, she had no opportunity to cross-examine her accuser.

During the course of trial, three of Jason's statements were admitted: a statement from a police interview on January 20, 2011, in which he exonerated Marcum; a statement from a police interview on January 21, 2014, in which he inculpated Marcum; and Jason's 2013 plea proffer, which also inculpated Marcum. Because these statements were intertwined, we address the circumstances in which they were all introduced.

At trial, one of Marcum's principal defenses was that the police had targeted her as a suspect early in the investigation and ignored exculpatory evidence. In support of that defense, defense counsel thoroughly cross-examined Detective Reeder on Jason's 2011 statement, in which he stated that Marcum was not involved in Angela's murder. After reiterating the statement multiple times, defense counsel asked Detective Reeder if he had ignored Jason's statement. In response, Detective Reeder stated that he had also interviewed Jason in 2014, well after Jason had entered his plea and been sentenced. Defense counsel objected at that point but withdrew his objection saying, "[f]ire away! Say whatever you want." With this, Detective Reeder

4

explained that in the 2014 interview Jason said that Marcum had committed the murder. Defense counsel made no further objection to this testimony, and Marcum does not argue on appeal that this testimony violated the Confrontation Clause.

During Detective Reeder's redirect-examination, the Commonwealth attempted to connect the dots and elicit why Detective Reeder reinterviewed Jason after his 2013 plea. Detective Reeder testified that, between the 2011 interview and the 2014 interview, he had learned about Jason's statements in his plea proffer. The Commonwealth then sought to introduce Jason's 2013 plea proffer, and defense counsel objected. At the ensuing bench conference, defense counsel argued that the statement was drafted by Jason's lawyer and thus not admissible. The court ruled that the plea proffer was admissible for two reasons: (1) for the effect it had on the investigation; and (2) because defense counsel opened the door during his cross-examination by questioning Detective Reeder about why he reinterviewed Jason in 2014. Defense counsel concluded the bench conference by saying, "let's just play all of [Jason's] statements. Let [the jury] have them all."

Marcum argues that by permitting the 2013 plea proffer to be admitted without calling Jason to testify the trial court violated her Sixth Amendment right. The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to confront her accusers at trial. *California v. Green,* 399 U.S. 149, 157 (1970). The Confrontation Clause has been interpreted to mean that "[t]estimonial statements of witnesses absent from

5

trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Certainly, in the context of a joint trial, the admission of a non-testifying defendant's confession that expressly implicated his codefendant violates the Confrontation Clause. *Barth v. Commonwealth*, 80 S.W.3d 390, 394 (Ky. 2001) (citing *Bruton v. United States*, 391 U.S. 123 (1968)).

However, both this Court and the United States Supreme Court have recognized that a criminal defendant may waive her constitutional right of confrontation. *Parson v. Commonwealth*, 144 S.W.3d 775, 783 (Ky. 2004), *as modified* (June 21, 2004), *as modified on denial of reh'g* (Oct. 21, 2004); *Illinois v. Allen*, 397 U.S. 337, 342-43 (1970). In such situations, counsel can waive a defendant's right of confrontation "so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." *Parson*, 144 S.W.3d at 783 (Ky. 2004) (quoting *United States v. Stephens*, 609 F.2d 230, 232-33 (5th Cir. 1980)).

With this standard and the full record in mind, we hold that defense counsel waived Marcum's Sixth Amendment right to confront Jason. It is clear from the record that Marcum's only objection to entering Jason's proffer was that it was drafted by his lawyer. The trial court addressed this by finding that the statement was an adoptive admission. Following that, defense counsel requested that all of Jason's statements be read to the jury. Marcum has

6

pointed to no evidence, and we have found no evidence, that she dissented from counsel's request that all of Jason's statements be read to the jury without Jason being called as a witness. Furthermore, it is clear from the record that counsel considered calling Jason to testify, but made the strategic decision not to do so. On the first day of trial, counsel stated that he was wary about calling Jason as a witness, labeling him as a "wildcard." Later in the trial, counsel stated that he was seriously considering calling Jason, but he did not do so. Based on Jason's conflicting statements regarding Marcum's culpability, we cannot say that the tactical decision not to call him or to insist on his presence, was illegitimate or imprudent strategy.

Furthermore, Confrontation Clause errors are subject to harmless error analysis. *Heard v. Commonwealth,* 217 S.W.3d 240, 244 (Ky.2007). This Court has considered a variety of factors in this calculation, including, "whether [the evidence] was cumulative and in particular cumulative of evidence supplied by the defendant him or herself." *Staples v. Commonwealth,* 454 S.W.3d 803, 827 (Ky. 2014), *reh'g denied* (Oct. 23, 2014). Here, Marcum adduced evidence that was nearly identical to the complained of plea proffer when Detective Reeder testified that Jason's 2014 statement inculpated Marcum. She cannot now complain that the proffer prejudiced her when it was cumulative of evidence she elicited.

Additionally, Marcum invited any error by eliciting testimony regarding Jason's statements. "Generally one who asks questions which call for an answer has waived any objection to the answer if it is responsive." *Shemwell v.*

*Commonwealth*, 294 S.W.3d 430, 436 (Ky. 2009) (quoting *Estep v. Commonwealth*, 663 S.W.2d 213, 216 (Ky.1984)). Such invited errors that amount to a waiver, i.e., invitations that reflect the party's knowing relinquishment of a right, are not subject to appellate review. *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 38 (Ky. 2011) (citing *United States v. Perez*, 116 F.3d 840 (9th Cir.1997)).[1]

When defense counsel cross-examined Detective Reeder in detail about Jason's 2011 statement, he opened the door to admission of the 2013 plea proffer and the 2014 statement. Furthermore, when counsel told Detective Reeder to "[f]ire away! Say whatever you want" he held that door open and invited the Commonwealth to not only walk through it but to bring the 2013 plea proffer with it. Because Marcum invited any error, she is foreclosed from complaining about it on appeal. For the foregoing reasons, we discern no error in the admission of Jason's 2013 plea proffer.

## B. Bedroom Note.

Marcum argues that admitting the bedroom note violated KRE 504(b)'s marital privilege. She submits that the note was a confidential communication that was only obtained by reason of the marriage.

---

[1] In *Rapone*, this Court specifically applied invited error to the Confrontation Clause and held, "one cannot commit to an act, i.e. requesting that the entire video be played, and later complain on appeal that the trial court erred to his detriment." *Rapone v. Commonwealth*, No. 2010-SC-000172-MR, 2011 WL 5880911, at *5 (Ky. Nov. 23, 2011) (citing *Gray v. Commonwealth*, 203 S.W.3d 679, 686 (2006) (applying invited error to an alleged discovery violation.)).

The trial court held an evidentiary hearing on this issue and heard testimony from Nick Marcum. Nick testified that he was married to Marcum when he discovered the folded-up note in the marital bedroom. He stated that he did not think Marcum was trying to communicate anything to him, and he delivered the note to police, without prompting, to aid their investigation into Angela's murder. After considering this testimony and legal arguments from both parties, the trial court found that the note was not intended to be a communication from Marcum to Nick. On the contrary, the court surmised that because of the way the note was folded and because it revealed her romantic relationship with another man, Marcum did not intend for Nick to find the note. Therefore, the court allowed the Commonwealth to enter the bedroom note into evidence.

KRE 504(b)'s marital communications privilege states:

An individual has a privilege to refuse to testify and to prevent another from testifying to any confidential communication made by the individual to his or her spouse during their marriage. The privilege may be asserted only by the individual holding the privilege or by the holder's guardian, conservator, or personal representative. A communication is confidential if it is made privately by an individual to his or her spouse and is not intended for disclosure to any other person.

When attempting to shed more light on this ancient privilege this Court has continued to turn to pre-KRE common law for interpretation. Over one-hundred years ago, in *Sapp*, this Court's predecessor broadly defined "communication," saying that it "should be construed to embrace all knowledge upon the part of the one or the other obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have

9

been known to the party." *Commonwealth v. Sapp,* 90 Ky. 580, 14 S.W. 834, 835 (1890). Recently, in *Winstead v. Commonwealth,* 327 S.W.3d 386, 392 (Ky. 2010 ) and *Slaven v. Commonwealth,* 962 S.W.2d 845, 851 (Ky. 1997), we maintained that liberal construction embodied in the common law.

On the other hand, the meaning of "confidential" has been somewhat narrowed with the adoption of KRE 504. The term requires "not only that the communication was made in private, but also that it was not intended for disclosure to any . . . person [other than the spouse], *i.e.,* there must have been a positive expectation of confidentiality." *Slaven,* 962 S.W.2d at 852.

Applying the privilege here, we cannot agree that the trial court abused its discretion when it admitted the bedroom note. Based on its broad interpretation, we have little trouble agreeing with Marcum that the letter was a communication; however, that is only half of the determination. We also agree with the trial court that this note was clearly not intended as a *confidential* communication between Nick and Marcum. Nick testified that the note was not meant for him, and no evidence was offered to contradict that testimony. Furthermore, the trial court found that the way in which the note was folded implied a desire to prevent Nick from knowing its contents.

Moreover, the substance of the note clearly implies that it was meant for someone other than Nick. The phrases "You will get off in Richmond" and "[a]ll I want is for you to get out so we can finally be together" obviously refer to someone awaiting criminal prosecution while currently in jail. Nick was living in the marital home when the note was discovered and nothing in the record

10

indicates that he was in jail during this time period. Also, although "Nick??" does appear on the page, it is evident from the contents and layout that Nick was being written about, not written to. Finally, the Commonwealth argues, and put on some proof to suggest, that the note was actually a way for Marcum to silently communicate with Jason while he was in jail. There are insufficient facts to fully support this conclusion; however, it is plausible. Nevertheless, it is not necessary for us to determine the true recipient of the note but only whether it was meant for Nick. It is clear that it was not; therefore, the trial court correctly concluded that the note was not intended to be a confidential communication between Marcum and her husband and, thus, not privileged under KRE 504(b).

## IV. CONCLUSION

For the reasons stated above, we affirm the trial court's admittance of both pieces of evidence and Marcum's conviction.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Theodore S. Shouse
Erin Scott Kennedy
Steven Rush Romines

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Susan Roncarti Lenz
Assistant Attorney General

11