Yasmany ORO–JIMENEZ, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2012–SC–000101–MR.

Supreme Court of Kentucky.

Oct. 24, 2013.

Linda Roberts Horsman, Assistant Public Advocate, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Bryan Darwin Morrow, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Yasmany Oro–Jimenez, appeals as a matter of right, Ky. Const. § 110, from a judgment of the Jefferson Circuit Court, based upon jury verdicts convicting him of two counts of first-degree robbery, possession of a handgun by a convicted felon, resisting arrest, five counts of third-degree terroristic threatening, and of being a second-degree persistent felony offender (PFO).[1]

For those offenses Appellant was sentenced to a total of twenty-five years' imprisonment. On appeal, Appellant raises the following arguments: (1) reversal is required because he suffered prejudice when the trial court's *voir dire* procedure was not consistent with the applicable statutes and rules; (2) the trial court improperly allowed Appellant's single prior felony conviction to be used for dual purposes: once as the underlying felony that established his conviction for possession of a handgun by a convicted felon *and* once to establish his status as a PFO for enhancement of the robbery sentence; and (3) reversal of the penalty phase is required

---

1. The jury also acquitted Appellant of the charge of tampering with physical evidence.

because the trial judge improperly refused to grant a mistrial after a juror had contact with a victim-witness. For the reasons set forth herein, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Evidence presented at trial demonstrated that Appellant robbed two men at gunpoint at a Louisville apartment complex. Soon after the robbery, police apprehended Appellant with a gun in his possession and they ordered him to lie on the ground. Although he was initially compliant with police orders, Appellant soon became combative and four officers were required to restrain him. Thereafter, the stolen items were recovered from Appellant's vehicle. As he was being transported to the police station, Appellant directed derogatory remarks to the transport officer and, at the police station, he struggled and threatened to kill several police officers. After a jury trial, Appellant was convicted and sentenced as set forth above.

## II. VIOLATION OF RULES FOR JURY SELECTION

Appellant first argues reversal is required because he suffered prejudice when the trial court employed a *voir dire* procedure that diverged from the applicable statutes and rules. At trial, the full panel of prospective jurors consisted of forty-six persons. Rather than drawing at random the number of jurors needed to fill the jury box and provide for peremptory strikes, and then conducting the *voir dire* examination of only those jurors, the trial court opted to begin by allowing a *voir dire* examination of all forty-six potential jurors. Consequently, eleven of the forty-six jurors were excused for cause, mostly by agreement between the defense counsel and the prosecutor. Of the remaining thirty-five, three were removed by random

selection, so that thirty-two jurors remained. Since the trial court intended to seat a trial jury of fourteen jurors (twelve plus two extra as alternates), each side was allotted nine peremptory challenges pursuant to RCr 9.40. The Commonwealth exercised all nine of its peremptory strikes and Appellant used eight, four of which matched the Commonwealth's peremptory strikes, leaving nineteen jurors qualified to try the case. By random selection, the number was then reduced to fourteen jurors, including two undesignated alternates.

Appellant contends that the foregoing process did not comply with our rules for jury selection, and that he was prejudiced by it. Appellant claims that the trial court's unorthodox *voir dire* required him and his defense counsel to observe for possible challenge all forty-six individuals, rather than the thirty-two potential jurors seated for *voir dire* under the conventional process. Appellant contends that the need to be attentive to an extra *fourteen* potential jurors might have led to his failure to use all of his peremptory strikes which, in turn, might also have deprived him of the ability to challenge the trial court's failure to strike one additional juror for cause. However, the error was not preserved by appropriate and timely action in the trial court, and so we review it only for palpable error pursuant to RCr 10.26.

RCr 9.30 through RCr 9.40, along with Part Two of the Administrative Procedures of the Court of Justice, sets forth the jury selection procedures for criminal cases in Kentucky. *Brown v. Commonwealth*, 313 S.W.3d 577, 596 (Ky. 2010). "Under these provisions the trial court is vested with broad discretion to oversee the entire process, from summoning the venire to choosing the petit jury which actually hears and decides the case." *Id.* Accordingly, we review the jury selec-

tion procedures employed by the trial court for abuse of discretion; "that is, whether the ruling can be characterized as arbitrary, unreasonable, or contrary to sound legal principles." *Id.*

RCr 9.30(1)(a) articulates the rules governing the selection of jurors, providing, in pertinent part:

> In a jury trial in circuit court the clerk, in open court, shall draw from the jury box sufficient names of the persons selected and summoned for jury service to compose a jury as required by law. If one or more of them is challenged, the clerk shall draw from the box as many more as are necessary to complete the jury.

RCr 9.30(2) provides that "[t]he jury-selection process shall be conducted in accordance with Part Two (2) of the Administrative Procedures of the Court of Justice." Administrative Procedures of the Court of Justice, Part II, § 10, "Selection of Petit and Grand Jury," provides, in pertinent part:

(1) To select a grand jury [or petit jury per 9.30(2) ] from a jury panel, the judge or designee shall:

    (a) Take identifying numbers from those assigned on the randomized jury list;

    (b) Deposit in a box numbered cards bearing the same numbers as those assigned to the panel;

    (c) Draw the required number of cards, dependent on the number of jurors to be chosen, from the box and record the number of each card as it is drawn.

(2) The persons whose numbers have been drawn shall constitute the grand jury or petit jury as the case may be, unless excused or removed by challenge.

(3) As prospective jurors are excused or challenged, additional cards shall be drawn, one for each juror required, until all of the cards have been exhausted.

RCr 9.40 articulates the rules governing peremptory challenges, providing, that in felony cases, each side is entitled to eight peremptory challenges, unless the court will seat alternate jurors, and in that case, each side may be allotted one or two additional challenges.

Thus, in a case where no alternates are seated, the clerk should call twenty-eight jurors, so that if each side exercises its eight peremptory challenges and there are no overlapping challenges, a panel of twelve jurors remain to try the case. In the present case, however, since the trial court elected to seat two alternate jurors, and increase each side's peremptory challenges to nine, the clerk should have been directed to draw thirty-two potential jurors, rather than forty-six jurors, so that fourteen jurors would remain after each side used its nine peremptory challenges.

We have held that "where the error is preserved and there is a substantial deviation in the jury selection from the rule and the statute a reversal is required." *Robertson v. Commonwealth,* 597 S.W.2d 864, 865 (Ky.1980). However, it is well-settled that we will "not consider minor errors in jury selection reversible in the absence of a showing of prejudice." *Id.*

In *Robertson,* we held that reversal was required where "the trial court called jurors during *voir dire* in order of their assigned number, and replaced each stricken juror with the next juror in line, sequentially." *Hayes v. Commonwealth,* 320 S.W.3d 93, 96 (Ky.2010) (citing *Robertson,* 597 S.W.2d at 865). That procedure, we held, constituted "a substantial deviation from the then established procedures

because it equipped the parties with the ability to manipulate their strikes to obtain a particular person." *Id.* (citing *Robertson,* 597 S.W.2d at 865). Moreover, concluding that Robertson failed to make a showing of prejudice, we stated:

> We do not require the defendant here to show any prejudice, primarily for the reason that it is ordinarily a practical impossibility. The "randomness" argument by Robertson is not an argument of prejudice but merely an argument that the rule and the statute which require "random" selection must be followed.

*Robertson,* 597 S.W.2d at 865.

In contrast, in *Sanders v. Commonwealth,* 801 S.W.2d 665, 673 (Ky.1990), we held that a jury selection procedure in which the trial court qualified forty jurors and then seated the required thirty-one sequentially, according to the order in which they were originally called, did not justify reversal. We held:

> It is certainly arguable that the qualification of "too many" jurors permits the court unduly to influence the composition of the legal jury, especially if the court has the option of eliminating the excess number by lot or by numerical order. However, it is clear that the potential for abuse demonstrated in the instant case is miniscule when compared to that presented in the case of *Robertson.* . . . Under the circumstances, we believe it incumbent upon [Sanders] to demonstrate that he was prejudiced by the method of jury selection employed by the trial court. . . .

*Id.* (footnote omitted). Accordingly, we implicitly concluded that the jury selection method used by the trial court did not constitute a substantial deviation from the procedures required by the applicable statutes and rules. Moreover, we found it was impossible for Sanders to make a showing of prejudice sufficient to justify reversal.

*Id.* Indeed, the result of the jury selection would have been the same had the trial court qualified only the required thirty-one jurors since Appellant's counsel questioned all forty on *voir dire* and it is reasonable to believe that the first thirty-one were at least as desirable as the nine who were excused. *Id.*

Conceptually, the situation in this case is identical to *Sanders.* While the procedure used by the trial court has the virtue of engaging the entire panel in the process and avoiding repetition of questions that occur when challenged jurors are excused during the *voir dire* examination, that process does have its drawbacks, as Appellant notes. More importantly for our review, it departs from the rules established by this Court which are in place to ensure consistency of practice and state-wide uniformity.

■ Nevertheless, the procedure employed here did not constitute a substantial deviation from the proper method and does not require reversal and re-trial simply for the sake of enforcing strict compliance with our rules. And while reversal under the facts of this case would not be appropriate, we acknowledge that circumstances may arise in which a defendant could make a showing of prejudice arising from such jury selection procedures that would require reversal. Here, however, Appellant fails to convincingly demonstrate actual prejudice. He got a jury that passed the *voir dire* examination without controversy and he identifies no juror upon whom he might have exercised his remaining peremptory challenge. Instead, the fact that he had a peremptory challenge left over highlights his satisfaction with the panel.

### III. DUAL USES OF THE PRIOR FELONY

Appellant next argues the trial court should not have allowed Appellant's single

prior felony conviction to be used as the underlying felony that established his conviction for possession of a handgun by a convicted felon *and* as the underlying felony that established his status as a persistent felony offender for enhancement of the robbery sentence. Prior to trial, Appellant moved to dismiss the second-degree PFO count. The Commonwealth argued that Appellant's single prior felony conviction could be used to establish the offense of possession of a handgun by a convicted felon *and* to establish the Appellant's status as a second-degree persistent felony offender to enhance the robbery charge. The Commonwealth conceded that the PFO status established by Appellant's prior felony could not be used to enhance his sentence for the charge of possession of a handgun by a convicted felon.

Appellant agreed with the Commonwealth's interpretation of the law and he then asked the trial court to dismiss the PFO count as it related to the possession of a handgun by a convicted felon charge. The trial judge overruled Appellant's motion, reasoning that the dismissal was unnecessary because he would simply phrase the jury instruction in a way that would not give the jury the option of a PFO enhancement of the sentence for possession of a handgun by a convicted felon. Based upon that discussion, the trial court ultimately instructed the jury that if it found Appellant guilty of being a second-degree PFO, the first-degree robbery sentences could be enhanced, but that the sentence for possession of a handgun by a convicted felon could not be enhanced.

█ Accordingly, by his agreement with the Commonwealth's position before the trial court, Appellant forfeited his right to complain on appeal about the dual use of the single prior felony. He requested the dismissal only of the PFO charge relating to the possession of a handgun by a convicted felon charge. In its practical application, the trial court granted his request. The jury was not permitted to apply a PFO enhancement to his charge of possession of a handgun. The jury was permitted, and apparently did, use his single prior offense as the source for the status as a convicted felon on the handgun charge, and also as the prior felony for the PFO status that enhanced his robbery sentences. But that is not the issue Appellant presented to the trial court. Since this issue is not preserved for appellate review, we will only review for palpable error under RCr 10.26.

█ It is well-settled that "when a single prior felony is utilized to create an offense or enhance a punishment at the trial of the second crime so created or enhanced, it may not be used *at that trial* to prosecute the defendant under KRS 532.080[,]" the PFO statute. *Eary v. Commonwealth,* 659 S.W.2d 198, 199–200 (Ky. 1983) (quoting *Jackson v. Commonwealth,* 650 S.W.2d 250, 251 (Ky.1983)). In *Boulder v. Commonwealth,* 610 S.W.2d 615, 618 (Ky.1980), we held the Commonwealth could not use a single prior felony conviction to establish the offense of possession of a handgun by a convicted felon and, at the same time, to enhance the sentence for that offense, as well as a first-degree assault conviction, by the use of the PFO statute. However, in *Dale v. Commonwealth,* 715 S.W.2d 227, 227 (Ky.1986), we overruled *Boulder's* holding to the extent it "ascribed double enhancement to the assault conviction." Accordingly, in *Dale* we found there was no double enhancement when two prior felony convictions were used to establish the offense of possession of a handgun by a convicted felon at the same time it was used to enhance the sentence for a first-degree robbery conviction via the PFO statute. *Id.* As to

the possession of a handgun by a convicted felon charge, the prior convictions were merely used to establish the status of Dale as a felon and they "were never used again in relation to that charge, being specifically excluded from the PFO proceedings." *Id.* As to the robbery conviction, "[t]he prior convictions were never utilized, in any manner, in the proof of the substantive offense of first degree robbery." *Id.*

Unlike *Dale*, Appellant has only a single prior felony conviction. Although we have not decided a double enhancement case in which a single prior felony conviction was used to establish a substantive offense and to enhance the sentence for another substantive offense, the Court of Appeals addressed this scenario in *O'Neil v. Commonwealth*, 114 S.W.3d 860 (Ky.App.2003). In *O'Neil*, there was no double enhancement when a single prior felony conviction was used to establish the offense of possession of a handgun by a convicted felon and to enhance a second-degree burglary sentence. 114 S.W.3d at 864 (citing *Dale*, 715 S.W.2d at 227). Based upon the principles as described in *Eary*, *Boulder*, and *Dale*, we agree with the reasoning of the Court of Appeals as discussed in *O'Neil*.

In Appellant's case, as in *O'Neil*, the use of Appellant's single prior felony conviction to establish the offense of possession of a handgun by a convicted felon *and* to enhance the first-degree robbery sentences under the PFO statute, did not constitute double enhancement. Thus, the Commonwealth's use of Appellant's single prior felony conviction was not error, palpable or otherwise.

## IV. JUROR MISCONDUCT

Finally, Appellant argues reversal of the penalty phase is required because the trial judge improperly refused to grant a mistrial after a juror had contact with one of the robbery victims who had testified in the trial. While the jury was engaged in its penalty phase deliberations, it was reported to the trial judge that during the break before the penalty phase one of the jurors had spoken to one of the victims outside the courtroom. The trial judge immediately convened a hearing on the matter as the jury continued its deliberation.

The witness told the court that as he stood waiting for the elevator, one of the jurors asked him how he was doing. The witness replied, "Better now," and the juror then said that he was "sorry" the witness had "to go through that." The witness replied, "Thank you," and then informed the juror that, out of respect for the judge's admonition, he could not speak to the juror.

Appellant moved for a mistrial. The trial judge deferred a final ruling on that motion until the penalty phase deliberations had concluded and the verdict had been returned. Then, the trial judge reconvened the hearing on the matter and examined the juror about the incident. The juror admitted the conversation and his description of the event matched the witness's version. The juror said that the comments had not affected his verdict in any way and that he had not shared any information about the contact with the other jurors. The trial court found, based upon the minimal nature of the contact, the timing of the contact after the guilt-phase verdict had been completed, and the juror's assertion that the conversation played no role in the jury's deliberations, that the incident did not justify the declaration of a mistrial, and so Appellant's motion for a mistrial was denied.

We agree with the trial court's handling of the matter. KRS 29A.310(2) provides:

No officer, party, or witness to an action pending, or his attorney or attorneys

shall, without leave of the court, converse with the jury or any member thereof upon any subject after they have been sworn.

■ While the statute plainly forbids any conversation between a juror and a witness, it does not follow that every violation of the rule requires a mistrial. It is well-settled that "a mistrial is not warranted if the conversation between the witness and the juror was 'innocent' and matters of substance were not involved." *Talbott v. Commonwealth*, 968 S.W.2d 76, 86 (Ky. 1998) (quoting *Jones v. Commonwealth*, 662 S.W.2d 483, 484 (Ky.App.1983)). "The true test is whether the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *Id.* Kentucky courts have generally drawn a bright line between conversations between jurors and witnesses about the case and those which are about unrelated matters. *Graham v. Commonwealth*, 319 S.W.3d 331, 339 (Ky.2010). "The former prejudice the defendant, whereas the latter are harmless." *Id.* (comparing *Doyle v. Marymount Hospital*, 762 S.W.2d 813 (Ky.App. 1988) with *Talbott*, 968 S.W.2d at 86 and *Jones v. Commonwealth*, 662 S.W.2d 483, 484 (Ky.App.1983)).

In *Talbott*, three jurors engaged in separate conversations with a witness for the Commonwealth (the sheriff) during trial recesses. *Talbott*, 968 S.W.2d at 86. None of those conversations related to the trial[2] and, while held to be violations of KRS 29A.310(2), all were nonetheless found to be harmless. *Id.*

■ In Appellant's case, the violation of KRS 29A.310(2) was certainly less benign than what happened in *Talbott* because the contact made by the juror in this case, even if only on a superficial level, pertained to the comfort or well-being of an important witness in the case. Nevertheless, upon our review of the video record, we are satisfied that the conversation was innocent, in that it was not calculated by either the juror or the witness to corrupt the proceeding in any way; that it involved no improper exchange of information material to the case; and, that it in no way influenced the verdict of the jury, nor did it otherwise reveal the presence of an improper influence that might have affected the verdict.

We conclude that the trial judge admirably handled this difficult and delicate situation, and properly concluded that a mistrial was not warranted. *See Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky. 2005) ("A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity.")[3]

## V. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. All concur.

---

2. One juror reported a drunken driver to the sheriff, one juror mentioned a recent severe storm, and the third juror asked the sheriff why the D.A.R.E. program was no longer offered at a local school.

3. Overruled on other grounds by *Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky.2010).